IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ANGELA D. SINGLETON,

    Plaintiff,

vs.                                      Case No. 4:13cv391-MW/CAS

GAYLE EUTSEY DEAN,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending is the pro se Plaintiff's motion for default judgment, doc. 13. A default has already been entered by the Clerk of Court against Defendant Gayle Eutsey Dean pursuant to FED. R. CIV. P. 55(a). Doc. 8.

Plaintiff's complaint alleged copyright infringement by Defendant Dean who authored the book, GABRIELLE'S FAT JOURNEY. Doc. 1. Plaintiff claimed that Dean plagiarized ideas, dialogue, language, events, and scenes from a book Plaintiff had written entitled DIAMOND'S FATE. *Id.* at 3. Plaintiff filed proof of service, doc. 6, demonstrating that on September 12, 2013, a process server served Dean. Because it appeared that Defendant had been served in this case but had not filed an answer or other response to the complaint, an Order was entered on October 17, 2013, finding

Dean in default and directing the Clerk of Court to mail the Order to the Defendant at the address provided by Plaintiff's process server. Doc. 7. Dean was required to file an answer and, pursuant to Rule 4(d), demonstrate why she should not be required to pay the expenses incurred in making service. *Id.* Dean did not respond. A subsequent Order was entered requiring Dean to pay the $40.00 fee required to serve the complaint and directing the Clerk to mail the Order to Dean. Doc. 9. She did not respond to that Order either.

Another Order was entered noting that Defendant was in default, but Plaintiff "had not yet moved for a default judgment against the Defendant." Doc. 12. Plaintiff was advised that she must support her motion for entry of default judgment and she was informed that she must demonstrate two elements in order to establish a claim of copyright infringement: (1) ownership of a valid copyright, and (2) "copying of constituent elements of the work that are original." *Id.* (citing <u>Latimer v. Roaring Toyz, Inc.</u>, 601 F.3d 1224, 1232–33 (11th Cir. 2010); *see also* <u>Cambridge Univ. Press v. Becker</u>, 863 F.Supp.2d 1190, 1221 (N.D. Ga. 2012) (citing <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991))). In response to that Order, doc. 12, Plaintiff filed the instant motion for default judgment, doc. 13. In support of her motion, Plaintiff submitted a lengthy document (doc. 13 at 9-84) providing a "page by page comparison" of Dean's book, GABRIELLE'S FAT JOURNEY (published in 2012), and Plaintiff's book, DIAMOND'S FATE (published in 2011). Plaintiff also provided copies of both books which have been reviewed along with the factual allegations of the complaint, doc. 1.

**Standard of Review**

A default judgment for injunctive relief may appropriately be entered when a defendant fails to defend against claims of copyright infringement. Arista Records, Inc. v. Beker Enterprises, Inc., 298 F.Supp.2d 1310, 1312 (S.D. Fla. 2003). The mere entry of a default by the Clerk does not, in itself, warrant the Court entering a default judgment. Tyco Fire & Sec. LLC v. Alcocer, 218 F. App'x 860, 863 (11th Cir. 2007) (citing Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)). Rather, a defaulted defendant is only deemed to admit to the plaintiff's well-pled allegations of fact.[1] Bait Prod. PTY Ltd. v. Aguilar, No. 8:13cv161, 2013 WL 5653357, at *2 (M.D. Fla. Oct. 15, 2013) (citing Tyco Fire & Sec., 218 F. App'x at 863). Thus, before a default judgment may be entered, a court must ensure that the well-pled allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and provide "a sufficient basis in the pleadings for the judgment entered." Nishimatsu Constr. Co., 515 F.2d at 1206.

As noted above, there are two required elements which must be shown to demonstrate a prima facie case of copyright infringement: (1) that Plaintiff owns a valid copyright and (2) that Defendant copied protected elements from the book. Peter Letterese And Assoc., Inc. v. World Institute Of Scientology Enter., 533 F.3d 1287, 1300 (11th Cir. 2008) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991), and Suntrust Bank v. Houghton Mifflin Co.,

---

[1] A "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." Nishimatsu Constr. Co., 515 F.2d at 1206.

268 F.3d 1257, 1266 (11th Cir. 2001)).[2]  Plaintiff has met the first element and has demonstrated that she was issued a copyright registration, effective October 10, 2012. Doc. 13 at 2.  As the copyright owner, Plaintiff has the "exclusive" right to prepare and to authorize others to prepare "derivative works[3] based upon the copyrighted work."  17 U.S.C. § 106(2).  Therefore, ruling on Plaintiff's motion focuses on whether Plaintiff has shown that Defendant copied protected expression from her book DIAMOND'S FATE.

To meet the second element, when a plaintiff "does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.' " Benson v. Coca-Cola Co., 795 F.2d 973, 974 (11th Cir. 1986), *reh'g denied*, 801 F.2d 404 (11th Cir. 1986) (en banc) (quoted in Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1248 (11th Cir. 1999)).  "If the plaintiff cannot show access, the plaintiff may still prevail by demonstrating that the works are 'strikingly similar.' " Ferguson v. National Broad. Co., 584 F.2d 111, 113 (5th Cir. 1978) (quoted in Herzog, 193 F.3d at 1248.

"To demonstrate copying, a plaintiff must show 'that the person who composed the defendant's work had access to the copyrighted material and that there is substantial similarity between the two works.' " Herzog, 193 F.3d at 1249 (quoted in

---

[2] Under the Copyright Act, 17 U.S.C. § 411(a), a civil action for copyright infringement cannot be instituted unless "preregistration or registration of the copyright claim has been made in accordance with" Title 17.

[3] A derivative work is defined as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work'."  17 U.S.C. § 101.

Corwin v. Walt Disney Co., 475 F.3d 1239, 1253 (11th Cir. 2007)). Here, Plaintiff has not alleged or presented "direct proof of copying." Although Plaintiff alleged that Dean sent her an "autographed copy" of Dean's book, Plaintiff did not allege how Dean acquired her book or had access to her book.[4] "Where a plaintiff cannot demonstrate access [s]he may, nonetheless, establish copying by demonstrating that [her] original work and the putative infringing work are strikingly similar." Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 n.6 (11th Cir. 2002) (quoted in Corwin, 475 F.3d at 1253). Thus, Plaintiff's case proceeds under the alternative "strikingly similar" (also known as "substantially similar") theory. Thus, Plaintiff must show that Dean's book, GABRIELLE'S FAT JOURNEY, is "strikingly similar" to her book DIAMOND'S FATE. Doc. 1 at 3.

Plaintiff's complaint alleged that Dean used substantially similar "ideas (dialogue, language, events, and scenes)" from Plaintiff's book when Dean created her own book.[5] Doc. 1 at 3. "Striking similarity exists where the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.' " Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984) (quoted in Corwin, 475 F.3d at 1253). The Court's inquiry focuses on "whether a reasonable jury could find the competing designs substantially similar at the

---

[4] Plaintiff did submit additional materials in support of her motion for default judgment in which she includes a purported email from Dean in which she admits that she read her first book very quickly and read her second book after Dean finished her book. Doc. 13 at 5. That fact was not, however, alleged in the complaint, doc. 1.

[5] Plaintiff states that her book is "a fictional story based on true events." Doc. 1 at 9. Plaintiff alleged her story "is a personal testimony of the trials and tribulations [Plaintiff] endured over the past five decades . . . ." Id.

Case No. 4:13cv391-MW/CAS

level of protected expression." Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1224, n.5 (11th Cir. 2008).

In conducting that inquiry, there are two issues which must be considered. First, has Plaintiff shown substantial or striking similarity?[6] Corwin, 475 F.3d at 1253-54 (11th Cir. 2007) (similarities are "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.") (citations omitted). The similarities must be such that "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 829 (11th Cir. 1982) (quoted in Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1248 (11th Cir. 1999)). Second, do the similarities involve copyrightable material? Herzog, 193 F.3d at 1248 (noting that "in an action for infringement, it must be determined both whether the similarities between the works are substantial from the point of view of the lay reader and whether those similarities involve copyrightable material."). Not all copying constitutes infringement, however, because "[t]he most fundamental axiom of copyright law is that '[n]o author may copyright his ideas or the facts he narrates.' " Harper & Row, Publishers, Inc. v. Nation Enter., 471 U.S. 539, 556, 105 S.Ct. 2218, 2228, 85 L.Ed.2d 588 (1985) (quoted in Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc. 499 U.S. 340, 344-345, 111 S.Ct. 1282, 1287 (1991)). Because copyright protection does not "extend to any idea, procedure, process, system, method of operation, concept,

---

[6] "Striking similarity exists where the proof of similarity in appearance is 'so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.' " Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984) (quoted in Corwin v. Walt Disney Co., 475 F.3d 1239, 1253 (11th Cir. 2007)).

principle, or discovery," a "basic premise of copyright law is that, while expression is protected, ideas are not." Beal v. Paramount Pictures Corp., 20 F.3d 454, 458 (11th Cir. 1994) (citing to 17 U.S.C. § 102(b)).  Furthermore, " '*scenes á faire*,' stock scenes that naturally flow from a common theme, are not copyrightable." Beal, 20 F.3d at 459 (quoted in Marenem, Inc. v. Jump, No. 5:12cv212, 2013 WL 1693987, at *3 (M.D. Ga. Apr. 18, 2013)).[7]  In addition, "expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."  BellSouth Adver. & Publ'g Corp. v. Donnelley Info. Publ'g, Inc., 999 F.2d 1436, 1442 (11th Cir. 1999) (quoting Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir. 1991)).

Plaintiff's complaint alleged twenty four statements (including the title) from the Defendant's book which she contends infringed upon her book.  Doc. 1 at 4-8.  Plaintiff provided partial statements from Dean's book in an attempt to show the similarities to her own.  *Id.*  Thus, to assist the Court in reviewing the statements, Plaintiff was directed to "provide the reference from both books so the alleged infringing statements may be reviewed and compared as required."  Doc. 12 (citing Beal, 20 F.3d at 460, and Marenem, Inc., 2013 WL 1693987, at *4).  Plaintiff was also advised that she should explain why each statement is "copyrightable material."  Doc. 12.  Plaintiff was further advised that it was not enough to simply detail a list of similarities.  *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1215 (11th Cir. 2000) (noting "that lists of similarities

---

[7] "Uncopyrightable 'ideas' include *scenes faire*, which are 'sequences of events which necessarily follow from a common theme,' or 'incidents, characters, or settings that are indispensable or standard in the treatment of a given topic.' "  Peter Letterese And Assoc., 533 F.3d at 1302 (quoting Herzog, 193 F.3d at 1248 (internal citations and quotation marks omitted)).

between works are inherently subjective and unreliable"); Corwin, 475 F.3d at 1251 (same); *see also* Beal, 20 F.3d at 460 (approving that lists of similarities "are 'inherently subjective and unreliable,' particularly where the list contains random similarities" and noting that "[m]any such similarities could be found in very dissimilar works.") (citations omitted); Herzog, 193 F.3d at 1257. The Court cannot simply count the number of similarities and then declare default judgment appropriate. *See* Marenem, Inc., 2013 WL 1693987, at *4 (stating "[a]lthough we identify and compare the protected expressive features of the two works, we do so not simply to count the number of similarities and differences, but rather to determine whether the work's protected expression has been copied.") (quoting Baby Buddies, Inc. v. Toys R Us, Inc., 611 F.3d 1308, 1316 (11th Cir. 2010)).

Notwithstanding the guidance provided, Plaintiff's motion, doc. 13, presents a lengthy list of random similarities between the two books. Doc. 14 at 9-84. These similarities begin with pointing to similarities in the title of the books and the dedication pages listed in the two books.[8] Dean's book "is dedicated to my brilliant and wonderful children and grandchildren" and Plaintiff points to a "Dedication Page" from her book that is not accurate. Doc. 14 at 9. Plaintiff indicates she also dedicated her book "to my two wonderful sons," but the "Dedication" page in the 2011 publication of "Diamond's Fate" does not contain that language.[9] More importantly, a dedication page which

---

[8] Because the issue is whether Plaintiff is entitled to a default judgment, only those similarities which were also alleged in the complaint, doc. 1, will be considered.

[9] Plaintiff's 2011 publication is a revision of her first book of the same name, "Diamond's Fate" and a continuation of the story. The Contents page of Plaintiff's book indicate that chapters 1-7 are from "Book 1 (Revised)" and chapters 8-16 are from "Book 2."

recognizes "wonderful" children is so common that it is not a unique, copyrightable expression.  "Ordinary" phrases and cliche passages are not entitled to protection unless the arrangement or sequence of such phrases[10] lifts a common expression above the threshold to the required higher level of creative expression.  *See* Peter Letterese And Assoc., 533 F.3d at 1306 (noting that an "ordinary" phrase is not copyrightable expression); *see also* Salinger v. Random House, Inc., 811 F.2d 90, 98 (2d Cir. 1987) (finding that "where the quoted or paraphrased passages from Salinger's letters contain an "ordinary" phrase, the passage as a whole displays a sufficient degree of creativity as to sequence of thoughts, choice of words, emphasis, and arrangement to satisfy the minimal threshold of required creativity.").

The titles of the book are also neither strikingly similar or original.  "Gabrielle's Fat Journey" and "Diamond's Fate" are both generally stories of the authors' lives.  Neither is an autobiography as both authors indicate the stories are "fiction" but with true events.[11]  Writing a book about one's life experiences is commonly referred to as a journey, fate, destiny, or other similar words that describe the events that occur in life.[12]

---

[10] "For instance, there may be only one way to express the idea of a particular color or number of fish. But when those ideas are arranged in a particular order—such as 'one fish, two fish, red fish, blue fish'—the expression is no longer covered by the merger doctrine."  Palmer v. Braun, 287 F.3d 1325, 1334, n.3 (11th Cir. 2002).

[11] In GABRIELLE'S FAT JOURNEY, the back cover describes the book as "a Fiction with true events, and narrated by the author."  In DIAMOND'S FATE, Plaintiff wrote at the end of the book, "I thank God for giving me the courage to tell my life story in fiction and in truth in this book[.]"  ANGIE SINGLETON, DIAMOND'S FATE 233 (2011).

[12] A cursory glance at books for sale on Amazon reveal a multitude of books with the common word "fate" in the title such as: S. SIMONE CHAVOUS, CHOICES OF FATE 2013; TRACEY SMITH, LOVE'S FATE 2013; KYLE S. TAYLOR, FATE'S DESTINY 2014; VASILY GROSSMAN & ROBERT CHANDLER, LIFE AND FATE 2006.

Use of such a title is not "original expression" entitled to protection under the Copyright law.

Plaintiff points to another expression used in her book in the Prologue, doc. 1 at 4, although the quotation provided in the complaint is not the identical phrase used in the book. DIAMOND'S FATE 17. In her book, Plaintiff explained, "In BOOK I, Diamond's moral values instilled by her mother and adoptive parents, and her unwavering faith in God, enables her to endure many adversities she experiences in life." *Id.* On the back cover of Dean's book, she wrote about herself, "Her parents instilled good values and morals into their children. As a wife and mother Gayle, instilled the same values and morals into her children." GABRIELLE'S FAT JOURNEY. Those common phrases to describe one's upbringing are not expressions entitled to copyright protection. *See* White v. Alcon Film Fund, LLC, No. 1:13cv1163, 2014 WL 4960669, at *12 (N.D. Ga. Oct. 6, 2014) (noting that the use of colloquial or commonplace slang terms and ordinary phrases are not entitled to copyright protection).

Similar to White v. Alcon Film Fund, LLC, Plaintiff submitted a lengthy list of similarities. Doc. 13 at 9-84. The "comparison list is overwhelmingly comprised of generalized ideas, themes, and scène à faire. When the list is examined in detail, claimed similarities either fail to materialize altogether or they pertain to non-protectable expressions." White, 2014 WL 4960669, at *12. Plaintiff's list of similarities which was presented in the complaint (doc. 1 at 4-8)[13] are common, ordinary phrases:

---

[13] Plaintiff's original list, doc. 1, did not include page numbers. Plaintiff's supplemental list which was included in the motion for default judgment, doc. 13, provided the page numbers which are referenced in the comparison list provided on the following pages.

| Plaintiff's book, DIAMOND'S FATE | Dean's book, GABRIELLE'S FAT JOURNEY |
|---|---|
| "I love you all; and pray that each of you will allow God to order your steps throughout life's journey."  Pg. 14. | "Since childhood Gayle has been a victim that suffers from obesity, but through her life's journey she learned how to cope with the hassles that's related with being a fat person and kept moving forward; forward enough to become a best-selling author."  Cover. |
| "I felt like a little princess on Awards Day, and rightfully so!"  Pg. 23. | "Adrian was her mom's little princess, of course, and she enjoyed helping her mom out around the house and with her two little sisters."  Pg. 6. |
| "[Ruby Pearl] looked adorable in a pink, yellow and white cotton print dress with a wide ruffle bottom."  Pg. 141. | "At school [Adrian] was adored by everyone."  Pg. 6. |
| "She'd [Grandma Louise] arm herself with a long handled straw broom and clumsily bounce around inside the house like a rubber ball."  Pg. 108. | "As Adrian bounced around the cart, and her mom continued to pick up more items, all of a sudden they heard a little child's voice coming from the other end of the store aisle . . . ."  Pg. 7. |
| "In all of my young life, I'd never seen so many dolls in one place!  Dolls, dolls and more dolls!  I loved playing with dolls."  Pg. 40. | "The girls played with some of Adrian's toys, and mostly her dolls.  After they were done playing with the toys, they started playing all through the house."  Pg. 9. |
| "My sisters, other little girls from the neighborhood and I often played house in the woods or inside the stinkin' chicken coop in my grandparents' backyard."  Pg. 195. | "Then Adrian asked Gabrielle if she wanted to see some chickens. . . .  The chickens were in the back yard. Adrian's Grandma Ella had what they called bak in those days, a chicken coop."  Pg. 9. |
| "Grandma Emma raised chickens to feed our family.  The yellow and white baby chicks made cute pets for me and my cousins to playfully chase in the yard."  Pg. 215. | "[The chicken coop was] where they kept the chickens when they weren't loose and running around in the back yard."  Pg. 9. |
| "I attended Robert Russa Moton Elementary School (R.R. Moton) located | ". . . and Ms. McCarney took all of her children school on the first day that year. |

at 18050 Homestead Avenue in Perrine, Florida from kindergarten to sixth grade."  Pg. 197.

"Gayle Eutsey was my first childhood best friend."  Pg. 197.

"As we were approaching the parking garage, I heard a familiar voice call out, 'Diamond!'  I turned in the direction of the voice and it was Mr. Dawson . . ."  Pg. 58.

"I defeated Yolanda in the May Day Queen contest in fourth grade.  (That's the only beauty queen contest I ever won; though I competed in several.)"  Pg. 226.

"Sheila Davis, Teresa Bruton and I formed a singing group in 1971.  We were all thirteen years old."  Pg. 201.

"I was severely ostracized for being mixed race."  Pg. 36.

"In 1973, we finally settled down in Winston Manor - a fairly new low rental apartment complex."  Pg. 192.

They were attending at R.R. Moton Elementary. {Robert Russa Moton}  It as also located in the West Perrine area."  Pg. 11.

"Adrian had become Gabrielle's best friend, and they were only five and six years old."  Pg. 10.

"All of a sudden she heard a lady's voice that sounded very familiar to her.  When she turned to look, it was her aunt Mamie, her mom's sister, bringing her cousin Anthony into her classroom." Pg. 13.

"But on May Day that year, Gabrielle couldn't miss seeing her, because Adrian was R.R. Moton's May Day Queen.  Gabrielle was very happy to hear them announce Adrian's name as R.R. Moton's May Day queen."  Pg. 19.

"Even Gabrielle's big sister Victoria, age fifteen, had formed a three-female dancing group that she named, {The Diamondettes.}"  Pg. 23.

"In Gabrielle's English class was a girl named Bionca Hardwick.; [sic] Oh by the way, Bionca and Joelle were good friends.  Bionca was a mixer of black and white and was very pretty."  Pg. 39.

"Adrian said, 'Hey Gabrielle, I was hoping to see you today because I wanted to tell you that we getting ready to move.'  Gabrielle said, 'Moving again?'  Adrian said, 'Yep, my mom said that we're moving to some apartments called Winston Manor and they're not far from Perrine.  Gabrielle said, 'I'm gonna miss you, Adrian.' " Pg. 40.

There are also some similarities pointed out by Plaintiff in which she and Dean use the same or similar word:

| Plaintiff's book, DIAMOND'S FATE | Dean's book, GABRIELLE'S FAT JOURNEY |
|---|---|
| "I saw Aunt Mae running out of the house through a wide open front door." Pg. 37. | "The front door to his apartment was wide open." Pg. 3. |
| Describing the church where he mother's funeral was held, Plaintiff wrote: "The Church was so small; the congregants could hopscotch from the back pews to the altar." Pg. 26. | Dean wrote about the first time she saw Adrian: "During that summer in 1964, one day all of the children were out playing, including Gabrielle and her siblings, and most of the children were playing on the McCartney's street. Some of them were playing ball, some were jumping rope, roller skating, and some were playing hopscotch." Pg. 5. |
| "Aunt Mae never made it to senior high school. However, after conquering alcoholism she obtained a GED, and became a licensed beautician." Pg. 117. | "Ms. James was a beautiful black native of Florida, and a long-time hair stylist." Pg. 6. |
| "My beautiful dark skin mother Ernestine . . . ." Pg. 191. | "Adrian's mom was named Geraldine Cole, and she was a dark-skinned beautiful woman also." Pg. 6. |
| "My mother raised me, Glenda and Lori as a 'single parent'." Pg. 192. "My mother worked at Miami Children's Hospital . . . ." Pg. 191. | "Geraldine, was a single, but divorced mother of three, and made it known that her little girls were her main priority. She worked at a local hospital in the housekeeping department . . . ." Pg. 6. |
| Plaintiff told of learning her grandma had passed away: "I was peering out the bedroom window of our beautiful warm first floor apartment watching snowflakes fall to the ground, when I heard my mother cry out, 'He finally killed my mama!' " Pg. 217. | Describing a winter day in 1978, Dean wrote: "Instead, she all of a sudden saw snowflakes come down, and she said to the rest of the class, 'Look, it's snowing outside.' " Pg. 81. |

In reviewing the language pointed to by Plaintiff in the complaint, no reasonable person would view Dean's book as "substantially similar" to Plaintiff's book.  The two books tell different stories, with little overlap.  It is not surprising that a few locations and events are contained in both books as Plaintiff and Dean were childhood friends and are telling their own life stories.  It is also not surprising that both books include chapters that concern graduation, weddings, family reunions, death and grief as those are universally important events in all human life.  Those are the events that mark milestones, give us inspiration, shape our character, and lead us toward our own destinies.  There are no claims made by Plaintiff that Dean took Plaintiff's story as her own.  Indeed, the two stories are quite different and are independent creations.  Plaintiff has not demonstrated that Dean copied protected elements from Plaintiff's book in her own book.  With the exception of several common phrases and generalized life events, the works have scant similarities.  No reasonable fact-finder could conclude that the Dean's book is substantially similar to the copyrightable elements of Plaintiff's book.

**RECOMMENDATION**

In light of the foregoing, it is respectfully **RECOMMENDED** that Plaintiff's motion for default judgment, doc. 13, be **DENIED**, and that the complaint be **DISMISSED** sua sponte for failure state a claim for copyright infringement.

**IN CHAMBERS** at Tallahassee, Florida, on December 10, 2014.


 S/    Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.